OHIO STATE BAR ASSOCIATION *v.* WOLFSON.

[Cite as *Ohio State Bar Assn. v. Wolfson,*
102 Ohio St.3d 405, 2004-Ohio-3480.]

(No. 2004–0060—Submitted March 15, 2004—Decided July 14, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Richard Evan Wolfson of Portsmouth, Ohio, Attorney Registration No. 0041470, was admitted to the practice of law in 1989. On December 11, 2002, respondent was found guilty of the third-degree felony of tampering with evidence, in violation of R.C. 2921.12(A)(2). This conviction, pursuant to Gov.Bar R. V(5)(A)(4), resulted in his suspension from the practice of law for an interim period beginning on January 29, 2003. *In re Wolfson,* 98 Ohio St.3d 1431, 2003-Ohio-341, 782 N.E.2d 588. The conviction also generated relator's complaint that charged respondent with four violations of various sections of the Code of Professional Responsibility, specifically DR 1–102(A)(3) (prohibiting illegal conduct involving moral turpitude); 1–102(A)(4) (prohibiting conduct that involves dishonesty, fraud, deceit, or misrepresentation); 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice); and 1–106(A)(6) (barring conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 2} The facts surrounding the felony conviction that gave rise to the complaint were stipulated by the parties and are additionally set forth in the testimony as follows. Between the ages of 16 and 43, there was, by respondent's admission, "no meaningful period" in which he did not use drugs or alcohol. During that time, respondent abused illegal drugs as well as medication that had been prescribed for his diagnosed conditions of anxiety, depression, and obsessive-compulsive disorder. He unsuccessfully tried to overcome his dependencies on more than one occasion. Respondent denied ever selling drugs.

{¶ 3} On Friday, March 22, 2002, a casual acquaintance, Eric Deer, and his father, Gerald, showed up at respondent's apartment at approximately 10:00 in

the evening. According to respondent, both men were visibly under the influence of alcohol or drugs. Eric apparently later told respondent that he had taken Xanax and was wearing a fentanyl patch, which is a strong opioid used as an alternative to morphine.

{¶ 4} Over the next two to three hours, Eric became increasingly unresponsive. Eventually, Eric passed out, and efforts to awaken him were unsuccessful. But when respondent suggested obtaining medical assistance, Gerald, who apparently was on probation and feared police involvement, threatened respondent's wife.

{¶ 5} Over the next approximately 12 hours, Eric remained comatose but was breathing. At approximately noon, respondent's landlord learned of the situation and insisted that emergency personnel be called. Gerald fled the scene.

{¶ 6} While medical personnel assisted Eric, police questioned respondent and his wife. Respondent wrote and signed an unsworn statement that Eric had arrived at the apartment that morning. He immediately recanted his statement and confirmed that Eric had arrived the night before. Respondent then permitted the officers to search the apartment.

{¶ 7} Tragically, despite medical efforts, Eric died at the scene. On April 9, 2002, a two-count criminal indictment against respondent was handed down by the Lawrence County Grand Jury. Shortly thereafter, the Common Pleas Court of Lawrence County granted the state's motion to nolle count 2 of the indictment, a charge of obstructing justice.

{¶ 8} While awaiting proceedings on the criminal charge, respondent voluntarily entered a treatment program at The Marsh House, an in-patient recovery facility. As of his admission on August 28, 2002, respondent has been alcohol- and drug-free.

{¶ 9} On December 11, 2002, respondent pled no contest to a charge of tampering with evidence. He was found guilty and, as part of a plea agreement, was sentenced to five years of community control sanctions under intensive supervised probation that included serving the first six months at the STAR Community Justice Center.

{¶ 10} Respondent's participation in the STAR program ended after only five months because of respondent's repeated violation of STAR's rules and regulations. Respondent admitted some of the violations but denied others. He served the balance of his six-month confinement in the county jail.

{¶ 11} Respondent testified on all of these facts at his October 23, 2003 hearing before the panel. He also testified that he participates in daily—sometimes twice-daily—Alcoholics Anonymous and/or Narcotics Anonymous meetings and is presently secretary of the local Tuesday A.A. group. He maintains frequent contact with his sponsor and also now sponsors two recovering individuals

himself. Additionally, respondent submitted three letters to the panel. Ed Hughes, executive director of The Counseling Center, Inc., described respondent as "enthusiastic and dedicated to those actions that are conducive to effective, restorative recovery." Thomas A. Marsh, recovery program coordinator at the center, stated that respondent "has followed all treatment recommendations and has immersed himself in the twelve step recovering community." He noted that "while no one can [e]nsure complete success Mr. Wolfson is doing everything necessary to live an alcohol/drug free recovering lifestyle." Finally, respondent offered a letter from a fellow A.A. participant who characterized respondent as "an inspiration to all fellow alcoholics."

{¶ 12} The evidence adduced at the hearing persuaded the panel that respondent had made "a sincere and dedicated effort to extract himself from his alcohol and drug dependency, and in the process has endeavored to assist others going through the same difficulties," and this was considered to be a mitigating consideration in determining the appropriate sanction. The panel did not find that respondent's chemical dependency or diagnosed psychiatric conditions qualified as mitigating circumstances in and of themselves because there was no evidence that they contributed to respondent's misconduct. No aggravating factors were found.

{¶ 13} The panel accordingly adopted the stipulated sanction of a two-year suspension from the practice of law in Ohio recommended by the parties, subject to certain conditions, including the following:

{¶ 14} 1. Respondent shall participate actively and meaningfully in the lawyer support system provided by the Ohio Lawyers Assistance Program, Inc.;

{¶ 15} 2. Respondent shall undergo treatment by a psychiatrist, psychologist, or other licensed health-care professional concerning his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder;

{¶ 16} 3. Respondent shall take, regularly and as directed, all medications that any psychiatrist or medical doctor prescribes for him to treat his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder;

{¶ 17} 4. Upon applying for readmission to the practice of law in the state of Ohio, respondent shall present evidence that he has fully complied with the above requirements.

{¶ 18} 5. Respondent shall present a written report from a psychiatrist, psychologist, or other licensed health-care professional stating that the treating professional has evaluated and assessed respondent within 30 days of the application for readmission, and has concluded, to a reasonable degree of medical certainty, (a) that respondent can then emotionally and psychologically withstand the pressures and demands associated with the practice of law and (b) that none

of the conditions or disorders from which respondent then suffers will impair his ability to practice law or to meet the demands of the practice of law. Respondent shall provide relator a copy of the report upon request.

{¶ 19} The board adopted the findings of fact and conclusions of law of the panel. In the interest, however, of protecting the public and proving that recovery has occurred, the board recommended an indefinite suspension rather than a two-year suspension, with credit for time served under the interim suspension. The indefinite suspension was, moreover, to be on the same terms specified above by the panel, with a sixth condition imposed by the panel stricken as superfluous.

{¶ 20} We hereby adopt the findings, conclusions, and recommendations of the board. We share the concern of the panel and board that, at present, there is no prognosis from any qualified medical professional or alcohol- or chemical-dependency counselor that the respondent will be able to return to competent and ethical professional practice under specified conditions. For this reason, we find an indefinite suspension from the practice of law under the conditions set forth by the board, with no credit for time served, to be the more appropriate sanction. Respondent is hereby indefinitely suspended from the practice of law in Ohio and, in addition to the usual requirements of this sanction and of petitions for reinstatement, see Gov.Bar R. V(8)(E) and X, the following conditions for reinstatement shall also apply:

{¶ 21} 1. Respondent shall participate actively and meaningfully in the lawyer support system provided by the Ohio Lawyers Assistance Program, Inc.;

{¶ 22} 2. Respondent shall undergo treatment by a psychiatrist, psychologist, or other licensed health-care professional concerning his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder;

{¶ 23} 3. Respondent shall take, regularly and as directed, all medications that any psychiatrist or medical doctor prescribes for him to treat his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder;

{¶ 24} 4. Upon applying for readmission to the practice of law in the state of Ohio, respondent shall present evidence that he has:

{¶ 25} A. Actively and meaningfully participated in the lawyer support system provided by the Ohio Lawyers Assistance Program, Inc.;

{¶ 26} B. Undergone continuing treatment by a psychiatrist, psychologist, or other licensed health-care professional concerning his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder;

{¶ 27} C. Taken, regularly and as directed, all medications that any psychiatrist or medical doctor prescribed for him to treat his substance dependencies, dysthymic disorder, and obsessive-compulsive disorder.

{¶ 28} 5. Upon applying for readmission to the practice of law in the state of Ohio, with and as part of the petition for readmission, respondent shall present a written report from a psychiatrist, psychologist, or other licensed health-care professional stating that the treating professional has evaluated and assessed respondent within 30 days of the petition for readmission and has concluded, to a reasonable degree of psychiatric, psychological, or scientific certainty, (a) that respondent can then emotionally and psychologically withstand the pressures and demands associated with the practice of law and (b) that none of the conditions or disorders from which respondent then suffers will impair his ability to practice law or to meet the demands of the practice of law. Upon request by relator, respondent shall provide its representatives a copy of the report.

{¶ 29} Costs are taxed to the respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 30} I concur with the majority of the opinion and only dissent as to the failure to give respondent credit for time served. Respondent was suspended on an interim basis on January 29, 2003. Many of his problems had their roots in his mental illness and self-medication by use of illegal drugs. Respondent has been drug- and alcohol-free since August 28, 2002, and continues in active participation in Alcoholics Anonymous. The panel recommended a two-year suspension with conditions. The board, to ensure sustained recovery, recommended an increase to an indefinite suspension with conditions, *with credit for time served.*

{¶ 31} With no explanation as to why we have deviated from the board's recommendation, this court has declined to give credit for time served even though respondent was removed under an interim suspension. This will preclude respondent from practicing his profession for an additional two years before he can even petition for reinstatement, even though his suspension began in January 2003 and he has been sober since August 2002. See Gov.Bar R. V(10)(B)(1). We are therefore almost doubling the panel's recommended punishment and increasing even the board's recommended sanction without citing any basis for doing so. The respondent has not had any additional disciplinary problem, nor has he relapsed.

{¶ 32} Therefore, I respectfully dissent and would give respondent credit for time served back to January 29, 2003, but still require that he meet all other conditions for reinstatement.

———————

James T. Kennard; Jones, Day, Reavis & Pogue and John J. Mueller; and Eugene P. Whetzel, for relator.

Michael H. Mearan, for respondent.